# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. MARK A. BARRY,       )
                                )
        Plaintiff,          )
                                )
        v.              )     Case No. 2:17-cv-03003-PD
                                )
DEPUY SYNTHES PRODUCTS    )
INC., MEDICAL DEVICE         )
BUSINESS SERVICES, INC., and  )     **REDACTED PUBLIC**
DEPUY SYNTHES SALES, INC.    )     **VERSION OF DOCUMENT**
(d/b/a DEPUY SYNTHES SPINE),  )     **FILED UNDER SEAL**
                                )
        Defendants.     )

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION TO EXCLUDE CERTAIN OPINIONS AND
## <u>TESTIMONY OF DR. DAVID NEAL AND KIMBERLY SCHENK</u>

# TABLE OF CONTENTS

Page

I.   **INTRODUCTION** ...................................................................................1

II.  **ARGUMENT** ........................................................................................1

    A.   Schenk and Neal's Dependence on the Unreliable Opinions of
        Yassir Warrants Their Exclusion .....................................................1

    B.   Schenk Did Not Apportion The Royalty Base....................................2

    C.   Schenk's Adoption Of The Rate In ████████████
        Does Not Constitute Apportionment ..................................................4

    D.   Question 23 Of The Neal Survey Does Not Account For The
        Value Of Unpatented Features .........................................................8

    E.   Neal's Survey Should Be Excluded As Unreliable...........................10

        1.   Neal's Closed-Ended Questions With Non-Exhaustive
            Answers Render The Survey Fundamentally Flawed ............11

        2.   Neal's Sample Is Not Representative of his Target
            Universe ................................................................................12

III. **CONCLUSION** .......................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
    No. 2:07-cv-591 CW, 2010 WL 5186393 (D. Utah Dec. 15, 2010)..................11

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    No. 1:16-cv-00453-RGA, 2019 WL 4194060 (D. Del. Sept. 4,
    2019) ...........................................................................................................10

*Apple Inc. v. Wi-LAN, Inc.*,
    No. 14cv2235 DMS (BLM), 2019 WL 4248899 (S.D. Cal. Jan. 3,
    2019) ...........................................................................................................8

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
    No. 15-152-RGA, 2018 WL 4691047 (D. Del. Sept. 28, 2018)........................6

*Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City.*,
    383 F.3d 110 (3d Cir. 2004).............................................................................10

*Commonwealth Scientific and Industrial Research Organisation v.*
*Cisco Sys.*,
    809 F.3d 1295 (Fed. Cir. 2015) ...................................................................7, 8

*Consumer Union of United States Inc. v. The New Regina Corp.*,
    664 F. Supp. 753 (S.D.N.Y. 1987) .................................................................12

*Elbit Sys. Land & C41 Ltd. v. Hughes Network Sys., LLC*,
    927 F.3d 1292 (Fed. Cir. 2019) ...................................................................7, 8

*Ericsson, Inc. v. D-Link Sys.*,
    773 F.3d (Fed. Cir. 2014).................................................................................2

*Exmark Mfg Co., v. Briggs & Stratton Power Prods. Grp., LLC*,
    879 F.3d 1332 (Fed. Cir. 2018) ...................................................................5, 7

*Finjan, Inc. v. Blue Coat Sys., Inc.,.,*
  879 F.3d 1299 (Fed. Cir. 2018) ................................................................1, 2, 4

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
  618 F.3d 1025 (9th Cir. 2010)........................................................................12

*Fractus, S.A. v. Samsung*,
  No. 6:09-cv-203-LED-JDL, 2011 WL 7563820 (E.D. Tex. Apr.
  29, 2011)............................................................................................................9

*LaserDynamics v. Quanta*,
  694 F.3d 51 (Fed. Cir. 2012)............................................................................4

*Merisant Co. v. McNeil Nutritionals, LLC*,
  242 F.R.D. 315 (E.D. Pa. 2007) ....................................................................10

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
  No. 14-cv-03657-SI, 2019 WL 3070567 (N.D. Cal. July 12, 2019) ..............7, 8

*NetFuel, Inc. v. Cisco Sys. Inc.*,
  No. 5:18-cv-02352-EJD, 2020 WL 1274985 (N.D. Cal. Mar. 17,
  2020) .................................................................................................................6

*Procter & Gamble Pharms., Inc. v. Hoffmann-LaRoche Inc.*,
  No. 06 Civ. 0034(PAC), 2006 WL 2588002 (S.D.N.Y. Sept. 6,
  2006) ...............................................................................................................11

*Reinsdorf v. Skechers U.S.A.*,
  922 F. Supp. 2d 866 (C.D. Cal. 2013) ...........................................................11

*ResQNet.com v. Lansa*,
  594 F.3d 860 (Fed. Cir. 2010)..........................................................................4

*Sentius International, LLC v. Microsoft Corp.*,
  No. 5:13-cv-00825-PSG, 2015 WL 331939 .....................................................10

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014).........................................................................7

*Visteon Global Tech, Inc. v. Garmin Int'l, Inc.*,
    No. 10-cv-10578, 2016 WL 5956325 (E.D. Mich. Oct. 14, 2016)......................7

## I.     INTRODUCTION

The opinions of Barry's experts Schenk and Neal suffer from fundamental methodological flaws that require their exclusion—they are not, as Barry contends, merely issues of weight.  Neither expert's opinions can be divorced from Yassir's unreliable infringement opinions, which alone warrants their exclusion.  Beyond that, a straightforward application of black letter Federal Circuit law requires exclusion of Schenk's opinions because she failed to apportion her rate to reflect "*the value attributable to the infringing features of the product, and no more*." *Finjan, Inc. v. Blue Coat Sys., Inc.,*., 879 F.3d 1299, 1309 (Fed. Cir. 2018) (citation omitted) (emphasis added).  Neal's failure to follow accepted survey procedures in drafting his closed-ended questions and generating his sample likewise requires exclusion.  None of these flaws can be cured by cross-examination, and Schenk's and Neal's opinions should be excluded in their entirety.

## II.     ARGUMENT

### A.     Schenk and Neal's Dependence on the Unreliable Opinions of Yassir Warrants Their Exclusion

Barry does not dispute that Neal's survey is entirely dependent on Yassir's infringement opinions, nor does he dispute that Schenk's analysis is entirely dependent on the results of Neal's survey.  Thus, if Yassir is excluded—as he should be because he failed to apply the Court's claim construction (Dkt. 133-1)—Neal and Schenk's exclusion necessarily follows.

Barry's only rebuttal to this is the assertion that Neal and Schenk were similarly dependent on Yassir in Barry's prior case against Medtronic, and were not excluded.  But in *Medtronic*, unlike here, there was no dispute as to whether Yassir applied the Court's claim construction—and only two of the five currently asserted patents were at issue.  As a result, Neal's and Schenk's opinions were materially different than those they offer here.  Yassir drafted six new categories for surgeons to choose from in Neal's current survey, as opposed to the three he used in *Medtronic*.  Schenk also applies the new Neal survey differently than she did the previous one in *Medtronic*.  She applies the percentages of allegedly infringing surgeries obtained from Neal's survey to a base number of total deformity surgeries that is nearly double the total number of scoliosis surgeries she used for the same purpose in the *Medtronic* case.  Contrary to Barry's assertion, determinations regarding the admissibility of Neal and Schenk's opinions in the *Medtronic* case are not applicable here.

## B. Schenk Did Not Apportion The Royalty Base

Dr. Barry's argument that Schenk apportioned the royalty base represents a fundamental misunderstanding as to the Federal Circuit's law on apportionment. The Federal Circuit defines the term "apportionment" as determining "the incremental value that the patented invention adds to the end product." *Finjan*, 879 F.3d at 1311 (quoting *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d, 1201, 1226 (Fed. Cir.

2014)).  Schenk's analysis concerning the royalty base has nothing to do with the incremental value of the patented invention; it merely isolates the total number of allegedly infringing surgeries from non-infringing surgeries.  (*See* Dkt. 136-5 Ex. E 173:9-11 ("What I've done and what I've made an effort to do is to narrow the universe of procedures down to just those that would be alleged to infringe under Dr. Yassir's opinions.").)  That is akin to starting with a base of the total sales of products A and B, when only product A allegedly infringes, and narrowing to only include sales of product A.  That is not the "apportionment" required by the Federal Circuit.  Schenk herself admits that "people use the term 'apportionment' different ways.  So some people might say [what she did was] not apportionment"—the Federal Circuit falls squarely into the latter camp.

Despite Barry's assertions otherwise (Dkt. 142 at 6-9), Schenk also admits that she did not "apportion" the base *to account for the value of the patented invention*:

> Q: Was your opinion as to the royalty base the number of allegedly infringing procedures or the total deformity market?
>
> A: It's the number of allegedly infringing procedures performed with DePuy equipment.
>
> Q: Taking that number, did you make any effort to apportion that?
>
> A: No. That's the total number of procedures that are alleged to infringe the patent-in-suit. *To the extent that there's apportionment necessary to account for the value of the patented features versus other things, that apportionment takes place in the royalty rate.*

(Dkt. 136-5, Ex. E, 266:19–267:9 (emphasis added) (objections omitted.)

Schenk's admissions notwithstanding, the Federal Circuit has rejected Barry's assertion that using the Neal survey to arrive at the total number of allegedly infringing surgeries was a method of "apportioning" the royalty base. *See, e.g.*, *Finjan*, 879 F.3d at 1310 (reversing denial of judgment as a matter of law, rejecting the theory that multiplying a percentage of web traffic connected to the infringing method to worldwide base of users constituted apportionment of the royalty base).

### C.   Schenk's Adoption Of The Rate In ███████████████ Does Not Constitute Apportionment

████████████████████████████████████████████████

██████████████ a specialized part that was generally used only when performing Barry's technique.  Schenk adopted that █████████ without adjustment even though no such plug, or even something comparable, exists with respect to identifying relevant DePuy surgeries.   Schenk's wholesale adoption of that royalty rate without accounting for the admitted differences between ███████████████ and the hypothetical negotiation in this case is contrary to black letter Federal Circuit law requiring apportionment of the value of the unpatented and patented features of *DePuy's*—not ████████—products.   *Finjan*, 879 F.3d at 1309; *see also* *LaserDynamics v. Quanta*, 694 F.3d 51, 79 (Fed. Cir. 2012); *ResQNet.com v. Lansa*, 594 F.3d 860 (Fed. Cir. 2010).

Barry's attempt to frame this issue as whether ███████████ is a proper starting point for a reasonable royalty analysis is a red herring.  DePuy does not dispute that it could be used *as a starting point*.  But that does not save Schenk's analysis from exclusion for two reasons:  (1) she admits that there are differences between the terms and circumstances of ██████████ and those of the hypothetical negotiation between Barry and DePuy; and (2) she fails to analyze those differences.  This is a methodological failure that requires exclusion.  It is not, as Barry contends, simply a question of the "degree of comparability" of that license or an attack on Schenk's "analysis of the facts" because she provides no such analysis.  Her perfunctory discussion of the *Georgia-Pacific* factors is the exact opposite of the "sound economic reasoning" required by *Exmark*.[1]

   An expert must meaningfully analyze relevant differences between a comparable license and the hypothetical negotiation.  Without such a comparison, there is no apportionment of the incremental value of the invention *to DePuy*:

> Further, the fact that the parties to each agreement incorporated the concept of apportionment into their reasonable royalties does not itself show that the same royalty rates apply here. For example, one comparable agreement might provide a 15% reasonable royalty where the patented technology accounts for 50% of a product. A second comparable agreement might provide a 3% reasonable royalty where the patented technology accounts for 10% of a different product. Both

---

[1] The "sound economic reasoning" in *Exmark* to which Barry refers has to do with whether the royalty base was appropriately directed at the entire accused product. (Dkt. 142 at 12.)  As to apportionment of the royalty rate, the *Exmark* court rejected reasoning nearly identical to Schenk's.

rates are apportioned, but further analysis is required to determine whether either rate is apportioned in a comparable fashion to the contribution of the patented technology to the accused products.

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 15-152-RGA, 2018 WL 4691047, at *8 n.3 (D. Del. Sept. 28, 2018).   As set forth in DePuy's Motion, there are numerous differences in the terms of ███████████ that could have affected the rate negotiations, but would not be incorporated into the bare, non-exclusive patent license that is the subject of the hypothetical negotiation.  (*See* Dkt. 135-1 at 17-18.) In response, Barry points to nothing other than Schenk's unsupported and unexplained assertion that she evaluated and accounted for these differences.  (Dkt. 142 at 11-14.)  This pure *ipse dixit* is grounds for exclusion.  *See NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-cv-02352-EJD, 2020 WL 1274985, at *14 (N.D. Cal. Mar. 17, 2020) ("After reviewing Mr. Bratic's report (specifically the paragraphs that Plaintiff directs the Court to), it is clear that even while Mr. Bratic notes the differing circumstances, he never explains how the differences are reflected in his royalty rate."); *Bio-Rad Labs.*, 2018 WL 4691047, at *8 ("Allowing Mr. Malackowski's cursory analysis to circumvent the apportionment requirement would effectively gut the doctrine").

There is no dispute that the DePuy products are different than the licensed ████████ products, or that DePuy brought its own "contributions" to those products. (*See* Dkt. 1351-1 at 11-14.)  Barry's attempt to excuse Schenk's failure to account

for those differences is unavailing. (*See* Dkt. 142, at 14-16.) Barry resorts to irrelevant hyperbole to obfuscate the issue, arguing that "[t]here is simply no 'requirement that a patentee value every potential non-infringing alternative in order for its damages testimony to be admissible.'" (Dkt. 142 at 15.) DePuy is not asking Schenk to specifically identify and value each and every feature in the accused products—but she had to do more than provide a conclusory assertion that she considered unpatented features. She must "explain the extent to which they factored into the value of the [accused product] and her [proposed] royalty rate." *Exmark Mfg Co., v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1350 (Fed. Cir. 2018). Barry points to no such analysis. This, too, warrants exclusion. *Id.* at 1353; *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014); *Visteon Global Tech, Inc. v. Garmin Int'l, Inc.*, No. 10-cv-10578, 2016 WL 5956325, at \*16 (E.D. Mich. Oct. 14, 2016); *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL 3070567, at \*3 (N.D. Cal. July 12, 2019).

Barry relies heavily in his opposition on the Federal Circuit's opinions in *Commonwealth Scientific and Industrial Research Organisation v. Cisco Sys.*, 809 F.3d 1295 (Fed. Cir. 2015) ("CSIRO") and *Elbit Sys. Land & C41 Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292 (Fed. Cir. 2019). However, these cases are distinguishable in at least one critical respect: in each, the *defendant* itself was a party to the prior license negotiations alleged to incorporate the apportionment.

(*CSIRO*, 809 F.3d at 1302–03; *Elbit*, 927 F.3d, at 1300).  *See also Apple Inc. v. Wi-LAN, Inc.*, No. 14cv2235 DMS (BLM), 2019 WL 4248899, at *3 (S.D. Cal. Jan. 3, 2019) ("*CSIRO*, for instance, was a unique case wherein the parties engaged in actual license negotiations to the patent in suit.");  *MLC Intellectual Prop.*, 2019 WL 3070567, at *3 (distinguishing both cases because the defendant was involved in the negotiation at issue).  Here, in contrast, DePuy was not a party to the negotiation of

██████████.[2]

### D.   Question 23 Of The Neal Survey Does Not Account For The Value Of Unpatented Features

DePuy's Motion set forth the reasons why Question 23 of Neal's survey is irrelevant to apportionment.  (Dkt. 135-1 at 15-17.)  Barry's assertion that "Question 23 necessarily compares the value of the removed patented feature to the included non-patented features," and "DePuy is merely disagreeing with how Ms. Schenk accounted for the value of the unpatented features" (Dkt. 142 at 20), ignores the fact that Neal himself admitted that it was "not the goal of [Question 23], to quantify the relative impact versus some other unmeasured factors" (Dkt. 136-6, Ex. F at 238:9–

---

[2] Barry also cites to *ActiveVideo* to support his argument that the flaws in Schenk's analysis are factual issues for the jury.  However, *ActiveVideo* concerned the appropriateness of *how* certain factual considerations were applied and certain calculations were performed, not the expert's methodology.  Schenk's error is not how she applied relevant facts.  Her error is her complete failure to follow Federal Circuit law requiring her to apportion based on the value of the patented feature to DePuy's accused products.

11).  He further admitted that if he "was trying to quantify the impact of cost or some other feature and ascertain the relative value of linked derotators, I would *probably have had to ask about those other features*." (*Id*. at 238:12–16 (emphasis added).)

The court's analysis in *Fractus, S.A. v. Samsung* is instructive.  In *Fractus*, the court excluded the results of a survey that attempted to "quantify the estimated value of consumer preference for internal antennas in cell phones."  No. 6:09-cv-203-LED-JDL, 2011 WL 7563820, at *1 (E.D. Tex. Apr. 29, 2011).  The plaintiff conceded that it did not invent, nor did the patents cover, all internal cell phone antenna designs.  *Id*.  Instead, the patented invention related to only a type of internal antenna.  *Id*.  The court found that the survey measured only "the perceived consumer value of cell phones with any internal antennas" and concluded that "[s]urvey evidence purportedly demonstrating the value of internal antennas not tied directly to Plaintiff's technology confuses the issues and must be excluded."  *Id*.  As in *Fractus*, Barry admits that he did not invent, nor do the patents cover, all methods of linking.  Barry's invention relates only to specific methods of linking.  Question 23 is not tied to any of those methods and instead purports to demonstrate the value

of the option to link generally.  Schenk's reliance on it must be excluded.[3,4]

### E.    Neal's Survey Should Be Excluded As Unreliable

Contrary to Barry's suggestion, courts in the Third Circuit have not hesitated

to exercise their role as the "gatekeeper" and exclude surveys where, as here, the

flaws are so fundamental as to be unhelpful to the factfinder.  *See, e.g.*, *Citizens Fin.*

*Grp., Inc. v. Citizens Nat'l Bank of Evans City.*, 383 F.3d 110, 120–21 (3d Cir. 2004);

*Merisant Co. v. McNeil Nutritionals, LLC*, 242 F.R.D. 315, 319 (E.D. Pa. 2007).[5]

---

[3] The cases Barry cites are inapposite.  In *Sentius Int'l, LLC v. Microsoft Corp.*, the survey question at issue specifically asked respondents whether, if the product included a "grammar check" option, but not a "check grammar errors as you type" option, they would still purchase the product.  No. 5:13-cv-00825-PSG, 2015 WL 331939, at *3 (N.D. Cal. Jan, 23, 2015).  Thus, the question shed light on whether the accused feature would actually affect the purchasing decision.  The defendant's objection—whether "check grammar errors as you type"—was an appropriate description of the patented feature went to the weight, not admissibility.  *Id.*, at *4.  Question 23 says nothing about the patented feature as it is admittedly directed only to the ability to link, not the patented way of linking.

[4] Barry's attempt to discount DePuy's reliance on *Acceleration Bay*—which applies Third Circuit law—is also without merit.  Whether *Acceleration Bay* is directed towards apportionment in the base or the rate is irrelevant here.  As Neal, the survey designer, admitted, Question 23 says nothing about the relative importance of the patented feature.  Thus, as in *Acceleration Bay*, Question 23's failure to discern what portion of the respondents' decision was driven by the accused feature as against unpatented features warrants its exclusion.  *See Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 1:16-cv-00453-RGA, 2019 WL 4194060, at *4–5 (D. Del. Sept. 4, 2019).

[5] Barry's reliance on *Sentius* here also is misplaced: the methodological flaws identified in *Sentius* did not concern the fundamental errors associated with a non-exhaustive, close-ended question, nor was there a failure to ensure the representativeness of the sample.

### 1. Neal's Closed-Ended Questions With Non-Exhaustive Answers Render The Survey Fundamentally Flawed

Neal admitted that he did not instruct Yassir that the six categories used in his closed-ended questions should be exhaustive (Dkt. 136-6, Ex. F at 119:13–18), and Yassir acknowledged that they may not be (Dkt. 136-7, Ex. G, (Yassir Tr.) at 195:24–196:22). The question is not "how exhaustive" the options are, as Barry suggests. It is whether the options are exhaustive. *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, No. 2:07-cv-591 CW, 2010 WL 5186393, at *7 (D. Utah Dec. 15, 2010) ("The problem, however, is not the failure to use an open-ended question, but the failure to design a close-ended question that offers exhaustive alternative responses.").

Neal's failure to either (1) provide an exhaustive list of choices or (2) to provide respondents with an "I don't know" or "other" option goes to the fundamental reliability of the survey, not its weight. *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 878 (C.D. Cal. 2013) (failure to include an "I don't know" option in a closed ended question goes to the fundamental reliability of the survey); *Procter & Gamble Pharms., Inc. v. Hoffmann-LaRoche Inc.*, No. 06 Civ. 0034(PAC), 2006 WL 2588002, at *23 (S.D.N.Y. Sept. 6, 2006) (excluding survey,

where it did not "provide[] respondents with all possible options to any question (including the options of 'neither' or 'don't know')").[6]

### 2.    Neal's Sample Is Not Representative of his Target Universe

Barry sets up a straw man by arguing that "DePuy failed to identify any portion of the Diamond Reference or any other survey treatise that requires subsamples within a sampling frame to have no material differences." (Dkt. 142 at 25.)  Neal used three different sampling frames.  For Neal's opinions to be reliable, he had to consider (1) whether there were material differences between those samples, and (2) whether and how those differences might influence the results.  His admitted failure to do so is a fundamental flaw that renders his opinions unhelpful to the factfinder.  Thus, his opinions and testimony must be excluded.

## III.    CONCLUSION

For these reasons, DePuy respectfully requests that the Court exclude the testimony of Dr. David Neal and Kimberly Schenk in its entirety as unreliable.

---

[6] The cases Barry cites that purportedly support the use of non-exhaustive close-ended questions are inapposite.  In *Consumer Union of United States Inc. v. The New Regina Corp.*, 664 F. Supp. 753, 769 (S.D.N.Y. 1987), the court faulted the defendant for asserting that the question was misleading *because* it was close-ended and did not explain how the question was misleading or affected the *qualitative* survey results.  In contrast, DePuy specifically described the problems inherent in failing to provide an exhaustive list of answers when drawing a *quantitative* conclusion—if the correct answer is not available to a respondent, he or she must select a wrong answer.  (Dkt. 136, Ex. J, 393.)  *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1037 (9th Cir. 2010) did not address a close-ended question and is not relevant.

Dated: May 6, 2020                              **JONES DAY**


By:  /s/*Jenna M. Pellecchia*
Calvin Griffith (*pro hac vice*)
Patrick Norton (*pro hac vice*)
Kenneth Luchesi (*pro hac vice*)
T. Kaitlin Crowder (*pro hac vice*)
Thomas S. Koglman (*pro hac vice*)
901 Lakeside Avenue
Cleveland, OH  44114
Telephone: (216) 586-7347
Facsimile: (216) 579-0212
cpgriffith@jonesday.com
pjnorton@jonesday.com
kluchesi@jonesday.com
kcrowder@jonesday.com
tkoglman@jonesday.com

Tracy Stitt (*pro hac vice*)
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3641
Facsimile: (202) 626-1700
tastitt@jonesday.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Steven D. Maslowski (Attorney Id No. 84368)
Jenna M. Pellecchia (Attorney Id No. 309244)
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103
Telephone: (215) 965-1200
smaslowski@akingump.com
jpellecchia@akingump.com

*Counsel for DePuy Synthes Products,
Inc., Medical Device Business Services,
Inc., and DePuy Synthes Sales, Inc.
("d/b/a DePuy Synthes Spine)*

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2020, I caused a true and correct copy of the

foregoing document to be served via CM/ECF filing upon counsel for all parties.


/s/*Jenna M. Pellecchia*
Jenna M. Pellecchia